# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **Lacie R.**[1], | Case No. 6:17-cv-1952-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Brent Wells, HARDER, WELLS, BARON & MANNING, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Sarah L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Lacie R. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for both Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-33. For the following reasons, the Commissioner's decision is reversed and remanded.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on December 11, 1979. AR 80. Plaintiff applied for both DIB and SSI,

alleging a disability onset date of November 22, 2013. AR 16. As of the alleged disability onset

date, Plaintiff was nearly 34 years old. AR 80. She alleged disability due to obesity, liver disease,

bipolar disorder, borderline personality disorder, and severe pain. AR 272. Plaintiff's

applications were denied both initially and upon reconsideration, and a hearing was held before

Administrative Law Judge ("ALJ") B. Hobbs on May 17, 2017. AR 16. The ALJ denied

Plaintiff's claims on July 19, 2017. AR 13. The Appeals Court denied review on October 4,

2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now

seeks review in this Court.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2019. AR 18. Thus, for Plaintiff's DIB claim, she must establish disability on or before that date. At step one, the ALJ found that Plaintiff had performed substantial gainful activity during the claimed disability period, with a total of $4,824 in earnings. *Id.* The ALJ considered that job an unsuccessful work attempt, however, because Plaintiff left the job due to a reported aggravation of her post-traumatic stress disorder ("PTSD"). AR 18-19. At step two, the ALJ found that Plaintiff had the following severe impairments: PTSD; major depressive disorder; irritable bowel syndrome ("IBS"); obesity; fatty liver disease; gastroesophageal reflux disease ("GERD"); and gastroparesis. AR 19. At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the impairments listed in the regulations. AR19-20.

The ALJ then determined that Plaintiff retained the RFC to perform light work with the following additional limitations:

> [Plaintiff] is limited to frequent stopping, crouching, kneeling, crawling, and climbing ramps and stairs. [Plaintiff] can have no more than infrequent interactive contact with the public, coworkers, or supervisors. [Plaintiff] requires access to a bathroom within five minutes travel time from the workstation.

AR 21. At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a fast food worker. AR 26. At step five, the ALJ identified three jobs in the national economy that Plaintiff could perform based on her age, education, work experience, and RFC. AR 27-28. Ultimately, the ALJ found that Plaintiff was not disabled. AR 28.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) failing to identify specific clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective testimony; (B) failing to provide sufficient reasons to discount the treating medical testimony by Jay Richards, DO, and Stephanie Casey, DO, as well as the examining medical testimony by Raymond Noland, MD; and (C) rejecting lay witness testimony without providing reasons germane to each of those witnesses.

## A. Rejection of Plaintiff's Subjective Testimony

"There is a two-step process for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity

of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *See* SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily

living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's assessment of a claimant's testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

When the ALJ performed step one of the two-step process, he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 22. When the ALJ performed step two, however, he found that Plaintiff's statements about "the intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." AR 22-23. The ALJ provided several reasons for discounting Plaintiff's subjective testimony regarding her symptoms.

### 1. Inconsistencies—Gastrointestinal Symptoms

In discounting Plaintiff's testimony regarding the limitations caused by her gastrointestinal symptoms, the ALJ noted several inconsistencies between Plaintiff's statements to the Commissioner and Plaintiff's statements to medical providers. AR 23. The ALJ noted that although Plaintiff testified that she showered up to five times per day due to accidents from her

gastrointestinal problems, she reported to the state agency consultative doctor that she showered only once per week. The ALJ also noted that although Plaintiff claims to have significant incontinence problems, she did not report incontinence issues with any specific frequency to medical providers other than urinary tract incontinence for a short period of time.

The ALJ also noted inconsistencies between Plaintiff's testimony and the medical record. The ALJ also noted that Plaintiff's statements that she had severe daily vomiting and diarrhea such that she could hardly eat was inconsistent with her relatively stable obese weight, which actually trended up during the relevant period.

Plaintiff testified that she took "probably about five" showers a day to clean up after diarrhea accidents. AR 60. At her psychodiagnostic evaluation, however, Plaintiff claimed to take only one shower a week. AR 309; AR 1572. Plaintiff does not offer any explanation for this inconsistency.

Plaintiff testified that she vomits between six and thirty times per day. AR 57. Plaintiff also testified that she suffers from near-constant diarrhea. Plaintiff's weight has stayed relatively stable, however, throughout the period at issue,[2] and she even gained approximately thirty pounds between 2015 and 2017. *See* AR 2296; AR 2456. Plaintiff claimed to lose thirty pounds sometime before November 2015, but the ALJ noted that Plaintiff was taking phentermine for weight loss at the time and was more active during this period. It was a rational interpretation of the record for the ALJ to disregard this one instance of weight loss because of the overall trend of stability and weight gain. The conflict between the extensive documentation of Plaintiff's

---

[2] Plaintiff weighed 259 lbs. on June 6, 2014. AR 422. She weighed 267 lbs. on October 7, 2014. AR 1470. She weighed 272 lbs. on December 21, 2015. AR 2296. She weighed 305 lbs. on March 21, 2016. AR 2275. She weighed 305 lbs. on January 11, 2017. AR 2463. She weighed 308 lbs. on April 14, 2017. AR 2525.

weight and her subjective testimony about near-constant vomiting and diarrhea is a specific, clear, and convincing reason for the ALJ to discredit Plaintiff's testimony. *See Myres v. Colvin*, 2015 WL 5032027, at *7 (D. Or. 2015) ("The ALJ reasonably considered this weight gain as inconsistent with [claimant's] reports of regular nausea, vomiting, diarrhea, and inability to maintain proper nutrition.").

The ALJ followed SSR 16-3p in considering the statements Plaintiff made to medical providers and the Commissioner, and whether they were consistent. The ALJ also followed SSR 16-3p in evaluating Plaintiff's stated limitations with the evidence in the record. The inconsistencies between Plaintiff's testimony and her statements to medical providers and other medical evidence is a clear and convincing reason to discount her subjective testimony regarding her limitations.

### 2. Work history

Plaintiff has a history of IBS and GERD that dates back to when Plaintiff was working full time. *See* AR 323, 441, 449-50. More recently, Plaintiff worked for three or four months as a housekeeper. AR 52-53, 1569. During that time, she reported to her doctor that she walked approximately six miles per day to catch a shuttle for work, plus she walked during her job. AR 1431. Although the ALJ found Plaintiff's housekeeping job to be an unsuccessful work attempt, AR 19, the ALJ considered Plaintiff's walking routine and ability to work for three months as evidence that contradicts Plaintiff's testimony about the severity of her physical symptoms. AR 23. The Court agrees that Plaintiff's ability to walk six miles per day and work full time, although an unsuccessful work attempt, is still evidence that contradicts Plaintiff's testimony regarding the severity of her claimed physical limitations. This is a clear and convincing reason to discount Plaintiff's testimony regarding these limitations.

The ALJ's conclusion that Plaintiff left her housekeeping job for mental health reasons, however, is not supported by substantial evidence in the record. According to a medical report from September 24, 2015, around Labor Day while at her housekeeping job, Plaintiff suffered a PTSD flareup that caused her "to yell and be really upset and hallucinate." AR 1419. The chart note, recorded during a mental health visit and as reported by Plaintiff, further states that Plaintiff left work the day of the incident and was fired "a couple weeks later." *Id.* There is no explanation for why Plaintiff was fired. The ALJ assumed that Plaintiff was fired because of the incident on Labor Day. The ALJ points to no direct evidence supporting that assumption and only relies on this one chart note, which does not discuss the reasons why Plaintiff was fired. The ALJ is conflating correlation (a mental health incident occurring a few weeks before Plaintiff was fired) with causation.

Further, Plaintiff asserted another reason for being fired from her housekeeping job. Plaintiff testified that she was fired for missing too many workdays. AR 53. Plaintiff elaborated that her absences were caused by anxiety and the fact that she was "throwing up all the time." AR 54. Consequently, the ALJ committed an error by relying on one single medical record, which did not discuss the reason Plaintiff was fired, to conclude that Plaintiff did not leave the housekeeping job because of a physical ailment. This error is harmless, however, because the ALJ provided other valid reasons for rejecting Plaintiff's testimony regarding her physical ailments.

### 3. Testimony Regarding Mental Health Limitations

Plaintiff criticizes the ALJ's summary of Plaintiff's mental health treatment record for being too cursory. The ALJ characterized Plaintiff's "rather limited treatment" as evidence that her mental infirmities were less debilitating than her testimony would indicate. AR 25. The ALJ alluded to the fact that Plaintiff only took part in individual and group therapy for less than one

year between 2013 and 2014. *Id.* An ALJ may properly consider a claimant's resistance to treatment or lack of treatment in evaluating credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The Ninth Circuit has, however, criticized reliance on a lack of treatment to reject mental complaints, opining that it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ dismissed Plaintiff's mental treatment records as "not show[ing] an inability to engage in basic work activities." AR 25. Plaintiff argues, however, that the ALJ improperly dismissed Plaintiff's series of mental health crisis interventions due to panic attacks and suicidal ideation. AR 1521-23; AR 1551-55; AR 2283-84. The ALJ dismissed these interventions as "short lived" and the result of "situational stressors." AR 25. The ALJ further noted that Plaintiff reported having a good response to drugs, particularly Seroquel. *Id.*

Plaintiff argues that the overall record does not provide the ALJ with substantial evidence to support that reasoning. The Court agrees. Plaintiff had a significant episode at work because of a PTSD[3] flareup that included hallucinations and required her to leave her job that day. AR 1419. If a mental illness requires a person to leave work, it might indicate an inability to engage in basic work activities. Additionally, even if suicidal episodes are the result of "situational stressors," and are "short-lived," that is not a valid reason to downplay their impact on a claimant's ability to engage in basic work activities or to discount them in assessing Plaintiff's testimony. "An individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding . . . mental stressors that aggravate his or her

---

[3] "PTSD is associated with suicidal ideation and suicide attempts, and presence of [PTSD] may indicate which individuals with ideation eventually make a suicide plan or actually attempt suicide." DSM-5 at 278.

symptoms." Ruling 16-3p, at *9. Avoidance of work can be a claimant's method for avoiding situational stressors; therefore, an ALJ should not rely on the presence of situational stressors to downplay the impact of a mental health crisis on a claimant's ability to engage in basic work activities. Moreover, the Court notes that Plaintiff's good response to Seroquel after her intervention in December 2015 did not prevent her from needing additional interventions in April 2016 and September 2016. AR 2283, 2395. The Court further notes that Plaintiff had to decrease her Seroquel dosage because of worrying side effects to her liver.[4] AR 2272-73.

Finally, the Court notes that Plaintiff has been on significant and varied medications to treat her mental health impairments, including Prozac, Prazosin, Alprazolam, Fluoxetine, Lithium, Wellbutrin, Seroquel, Xanax, Citalopram, Buspirone, Trazodone, and Clonazepam. Despite these medications, Plaintiff has had fairly regular emergency mental health treatment, including suicidal episodes. Accordingly, the ALJ did not provide a clear and convincing reason to discount Plaintiff's testimony regarding her mental health impairments.

**B. Rejection of Medical Testimony**

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is

---

[4] "[Patient] is on a reduced dose of seroquel [sic] which was decreased . . . because her [liver function tests] started to increase after the medication was started." AR 2272.

not controlling, it is weighted according to whether an examination has occurred; the nature and extent of the treatment relationship; supportability; consistency with the record; and specialization of the physician. 20 C.F.R. § 404.1527(c)(2)-(6).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). "However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,1228 (9th Cir. 2009) (alteration in original) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

Neither party disputes that Dr. Richards and Dr. Casey (collectively "Doctors") qualify as treating medical sources. The ALJ made no explicit findings about whether the Doctors' opinions were contradicted by other medical opinions in the record. The Court has the authority to draw inferences based on the record about whether the Doctors' opinions have been contradicted. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

Both Doctors submitted their opinions by completing nearly identical form questionnaires. The Doctors checked boxes indicating that Plaintiff needed to lie down or rest

periodically throughout the workday. AR 2312; AR 2546. The Doctors indicated that Plaintiff's medical problems were severe enough to prevent her from maintaining a regular work schedule on more than four days per month.[5] AR 2313; AR 2546-47. These opinions contradict an examining physician's opinion indicating that Plaintiff would be able to either "stand and/or walk (with normal breaks)" or to "sit (with normal breaks)" for a total of six hours in an eight-hour workday. AR 93. The Doctors indicated that Plaintiff's work schedule would be frequently disrupted by her medical impairments, but the examining physician indicated that Plaintiff could maintain a stable work schedule if she does not stay in one position for too long and if she is able to take "normal breaks." The Court finds that the Doctors' opinions are contradicted, and the ALJ therefore can reject those opinions by providing specific and legitimate reasons supported by substantial evidence. *Ryan*, 528 F.3d at 1198.

### 1. Dr. Casey

The ALJ found that both Doctors "failed to provide specific information about how long [Plaintiff] would have to lie down or otherwise rest." AR 24. The ALJ also found that the Doctors did not explain whether the need for rest could be met by "merely sitting while performing work activity" or by taking breaks and resting outside of work hours. *Id.* The ALJ also found that neither of the Doctors "provides a reason for the expectation of excessive

---

[5] The ALJ made a misstatement by noting that both Doctors have failed to provide "a reason for the expectation of excessive absences." AR 24. The question on the form did not exclusively deal with "absences" from work. Instead, the question asked how often Plaintiff's ailments would result in Plaintiff being unable to maintain a regular work schedule. The question itself defines "[a] normal work schedule [as consisting] of an 8-hour day, 5 days per week with normal breaks that would usually consist of a morning and an afternoon break of approximately 10-15 minutes in duration and a lunch break of one-half hour [sic] to one hour." AR 2313; AR 2546. The Doctors did not necessarily indicate that Plaintiff would be absent four or more times a month. They were indicating that Plaintiff's work schedule—as defined by the question itself—would somehow be disrupted that many times by Plaintiff's ailments.

absences." *Id.* The ALJ further found that Dr. Casey, having only treated Plaintiff for three months, did not have a longitudinal relationship with Plaintiff. This latter reason is rejected because Dr. Casey saw Plaintiff six times in those three months, and because Dr. Casey reviewed Plaintiff's extensive earlier records relating to her gastrointestinal problems. AR 2508.

Dr. Casey gave specific information about both the recommended form of rest (lying down) and the recommended time (after meals). AR 2546. These statements by Dr. Casey qualify as an explanation that the need for rest could not be satisfied by "merely sitting down while performing work activity." What Dr. Casey did not do, however, is explain the duration that Plaintiff would need to lie down (*e.g.*, 20 minutes, 45 minutes, 60 minutes) after each meal. If it was only 15 minutes or 30 minutes, and Plaintiff's only meal during work hours is lunch, then Plaintiff could meet this restriction by taking a 60 minute lunch break, eating, and then laying down for 15 or 30 minutes. If it requires 45 or 60 minutes, however, then it may not be feasible for Plaintiff to rest the required time during a reasonable lunch break. Accordingly, the ALJ's conclusion that the Dr. Casey did not provide sufficient information regarding the limitation required relating to Plaintiff's need for rest is a specific and legitimate reason to discount this opinion.

Regarding Plaintiff's inability to maintain a regular work schedule, Dr. Casey opined that Plaintiff would not be able to do so four or more days per month. Dr. Casey provided no explanation or further information. Although this conclusion was unsupported on the form, Dr. Casey had voluminous medical records, both from her own treatment of Plaintiff and Plaintiff's earlier treatment, which Dr. Casey reviewed. A doctor's unsupported opinion can be supported by the doctor's experience with the claimant and underlying records. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). The ALJ did not provide any analysis as to why

Dr. Casey's experience with Plaintiff and underlying records did not support the opined work interruptions, given Plaintiff's long-documented gastrointestinal impairments. The mere fact that the opinion was unsupported on the form, by itself, was not a sufficiently specific and legitimate reason in light of the full record. Moreover, being precluded from maintaining a regular work schedule does necessarily mean a full-day "absence," as it appeared the ALJ assumed.

The ALJ also noted that Dr. Casey acknowledged that aside from gastroparesis,[6] "multiple aspects of [Plaintiff's] workup had been negative." AR 24. For example, Dr. Casey's opinion mentioned "negative stool studies done by past gastroenterologist" and "upper and lower endoscopies by past gastroenterologist without significant findings." AR 2544. Additionally, Dr. Casey acknowledged that aside from gastroparesis, Plaintiff's ailments are not supported by objective evidence, "as is the nature of such conditions." AR 2545. Dr. Casey's statements about gastroparesis, however, are supported by her medical exam reports, which acknowledge an earlier gastric emptying study showing that Plaintiff's "stomach empties slowly." AR 2501. The ALJ pointed to no medical opinion or other evidence that gastroparesis alone could not result in the opined work interruptions. Thus, the ALJ has failed to give a specific and legitimate reasons supported by substantial evidence to dismiss Dr. Casey's opinion regarding Plaintiff's inability to maintain a regular work schedule.

### 2. Dr. Richards

Dr. Richards indicated that Plaintiff would need to rest "[s]everal times per day to relieve abdominal pain & nausea & vomiting." AR 2312. Dr. Richards was even more vague than

---

[6] "Gastroparesis is a condition that affects the normal spontaneous movement of the muscles (motility) in your stomach. . . . Gastroparesis can interfere with normal digestion, cause nausea and vomiting, and cause problems with blood sugar levels and nutrition." *Gastroparesis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/gastroparesis/symptoms-causes/syc-20355787 (last visited Mar. 8, 2019).

Dr. Casey, and his opinion suffers from the same deficiency in that it does not include any specifics regarding duration. Thus, the ALJ could not ascertain whether the required rest could be completed during normal work breaks. With Dr. Richards' opinion, it also is unclear whether the "several times per day" would be required during the work day versus during a twenty-four hour day. With Dr. Casey, the rest was associated with meals and common understanding is that only one meal is during a work day. Dr. Richards, however, provides even less information from which the ALJ could determine how this limitation would affect a work day. Accordingly, the ALJ's stated concern regarding the vague and nonspecific information is a specific and legitimate reason to discount this opinion.

Dr. Richards provided the same opinion as Dr. Casey regarding Plaintiff's inability to maintain a regular work schedule—that she would be unable to do so four or more days per month. The ALJ gave the same reason as she did for Dr. Casey. For the same reasons as discussed with Dr. Casey, the ALJ did not provide a specific and legitimate reason to discount this opinion.

The ALJ also noted that Dr. Richards did not acknowledge Plaintiff's work activity as a housekeeper. AR 24. One of Dr. Richards' reports mentions that Plaintiff reported that she walked six miles to catch the shuttle to work and walked during work hours. AR 1431. Although this is evidence of some physical activity, it is not a specific and legitimate reason to discount Dr. Richards' opinion. The ALJ characterized the housekeeping job as a failed work attempt. Plaintiff testified that she missed one to two days per week while attempting to work this job, which is consistent with Dr. Richards' opinion regarding Plaintiff's disrupted work schedule. Dr. Richards was not required to consider the failed work attempt in his opinion.

### 3. Dr. Nolan

Raymond Nolan, M.D., administered a general medical exam on Plaintiff. Dr. Nolan wrote a report with the following testimony about Plaintiff's functional capabilities: "I would place no restrictions on duration of sitting or walking, lifting or carrying. . . . The recurring episodes of daily nausea and vomiting and the apparent regular issues of incontinence of feces and urine can be problematic and would require regular availability of bathroom facilities." AR 2316. Dr. Nolan further assessed that Plaintiff's reported headaches "did have some characteristics suggesting migraine." *Id.* Dr. Nolan attached a checkbox form to the exam report. The form included the following question: "State any other work-related activities, which are affected by any impairments and indicate how the activities are affected." AR 2322. Dr. Nolan made a handwritten note in response: "Frequent migraine headaches and daily complaints of nausea & vomiting, plus incontinence complaints re urine and stool could easily disrupt job productivity." *Id.*

The ALJ credited Dr. Nolan's opinion regarding access to a bathroom and included it in the RFC. The ALJ rejected Dr. Nolan's comment about frequent migraines by reasoning that the record contained no indication that Plaintiff had "received ongoing treatment for migraines much less headaches generally." AR 24. The Court agrees with the ALJ's dismissal of Dr. Nolan's migraine comment, and Plaintiff does not raise any arguments against it.[7]

---

[7] The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1114 (quoting *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). Furthermore, the ALJ is allowed to reject even a treating physician's opinion to the extent that the opinion is based on "an applicant's self-reports and not on clinical evidence, [if] the ALJ finds the applicant not credible." *Ghanim*, 763 F.3d at 1162. Therefore, an ALJ can properly disregard an examining physician's opinion to the extent that (1) the opinion is based on a claimant's self-reports and (2) the claimant's self-reports are deemed not credible because of an unexplained or inadequately explained failure to seek treatment.

Plaintiff argues, however, that the ALJ erred by failing to identify a reason for rejecting Dr. Nolan's opinion about how easily Plaintiff's nausea, vomiting, and incontinence could "disrupt" job activity. This comment, however, is not a statement of any functional limitation or assessment of functional capacity, but is a vague and nonspecific suggestion that the ALJ was not required to accept or act upon. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (noting that when a doctor's observation is a recommendation, it is "neither a diagnosis nor statement of [the claimant's] functional capacity" and an ALJ "[does] not err by excluding it from the RFC"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (noting that an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity"); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (noting that an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity"); *Espenas v. Colvin*, 2014 WL 7405655, at *8 (D. Or. Dec. 30, 2014) (noting that comments such as that the claimant "would benefit from additional instruction and time when adapting to more complex changes, and would benefit from assistance in setting work goals" were "occupational suggestions, not limitations per se"); *Villalobos v. Colvin*, 2014 WL 127084, at *8 (D. Or. Jan. 9, 2014) (noting that where the doctor's verbiage suggests "recommendations, as opposed to imperatives," they "are neither diagnoses nor statements of plaintiff's RFC").

Dr. Nolan also noted that Plaintiff could only use her right foot to operate "foot controls" because Plaintiff has a "history [of] ankle injury with restricted range of motion." AR 2319. Dr. Nolan indicated that Plaintiff had a limited ability to crawl resulting from "ankle restriction of range of motion and stiffness." AR 2320. The ALJ responded to this proposed limitation by referring to record evidence showing that the ankle injury was only minor, and "within a few

months, [the ankle] was considered stable and related complaints ceased." AR 19, 24. The ALJ's conclusion on this point is supported by substantial evidence. Consequently, the ALJ has given a specific and legitimate reason that is supported by substantial evidence to reject the examining physician's opinion with regard to Plaintiff's supposed ankle limitations.

The ALJ properly rejected Dr. Nolan's examining opinion with regard to Plaintiff's ankle limitations, headaches, and need to rest. The Court also finds that the ALJ did not need to incorporate Dr. Nolan's nonspecific findings regarding Plaintiff's impairments resulting in easy job disruption. The ALJ thus did not err in considering Dr. Nolan's opinion.

## C.  Rejection of Lay Witness Testimony

Any person who gives testimony about a claimant's impairments can qualify as a lay witness. SSR 06-03p, 2006 WL 2329939, at *2. Spouses and "other caregivers" can qualify as lay witnesses. *Id.* The ALJ's proffered reasons for rejecting lay witness testimony must be specific, as well as germane. *Bruce v. Astrue*, 557 F33d 1113, 1115 (9th Cir. 2009). "Inconsistency with medical evidence is one such [germane] reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The Ninth Circuit has recognized a difference between (1) a lay witness statement that lacks affirmative support in the record, which may not be a proper reason for rejecting testimony, and (2) a lay witness statement that is actually inconsistent with medical evidence in the record, which may be a proper reason for rejecting testimony. *Compare Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) *with Bayliss*, 427 F.3d at 1218.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Where an ALJ ignores uncontradicted lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error

harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

An ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d 1104, 1114 (9th Cir. 2012). Plaintiff argues that the ALJ failed to give specific and germane reasons to dismiss the lay witness testimony of Plaintiff's spouse, Lorianna R.; Plaintiff's caregiver, Stacey Stewart; and Plaintiff's spouse's former caregiver, Velma Arter.

### 1. Lorianna R.

Plaintiff's spouse, Lorianna R. submitted a third party function report in which she repeatedly claimed that neuropathy in Plaintiff's hips "causes her severe pain" and makes her prone to fall down. AR 337. The ALJ acknowledged that Lorianna R.'s function report was "somewhat consistent" with Plaintiff's own testimony, but the ALJ relied on a lack of medical diagnosis for Plaintiff's neuropathy as a reason to dismiss Lorianna R.'s lay witness testimony. The Court finds that this reason does not qualify as germane. "A lack of support from medical records is not a germane reason to give 'little weight' to those [lay witness] observations." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

The ALJ also noted that this report "adds little substance" and therefore was of limited evidentiary value. This comment, however, does not appear to be provided as a germane reason to discount the testimony. The ALJ did not assert that the report was irrelevant, only that it did not add much substantive information.

The ALJ also rejected Lorianna R.'s lay witness testimony because she submitted another, handwritten document that the ALJ characterized as included misrepresentations of the

medical evidence. AR 22. These purported misrepresentations are that Plaintiff broke her ankle in three places and that Plaintiff suffered from a significant gastrointestinal bleed. *Id.* The ALJ noted that Plaintiff suffered a "minimal avulsion fracture" to her ankle. AR 19 (citing to AR 1378-81, 1546, 2310); *see also* AR 1627 (x-ray report regarding Plaintiff's ankle, noting a small ossific fragment and concluding it is likely an avulsion fracture). The ALJ determined that Lorianna R.'s testimony that Plaintiff broke her ankle in three places was therefore inconsistent with and a misrepresentation of the medical record. Although the Court finds characterizing Lorianna R.'s report a "misrepresentation" of the medical record to be excessive, because it may be that she genuinely believed Plaintiff broke her ankle in three places instead of one, or misremembered, the Court agrees that the report is inconsistent with the medical evidence. This inconsistency is a germane reason to discount Lorianna R.'s testimony.

The Ninth Circuit has held that "an ALJ errs when he discounts [a lay witness's] *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent." *Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016) (emphasis in original). Reasons that "apply to a witness' entire testimony," however, are germane to discounting the "whole opinion." *Id.* Such reasons include marginal relevance, bias, and conflicts with other opinions or the witnesses' own statements. *Id.* at 944-45.

The ALJ divided Lorianna R.'s testimony into two parts—the first submission, which the ALJ discounted for its heavy reliance on undiagnosed neuropathy and noted it had limited evidentiary value, and the second submission, which the ALJ discounted as having testimony that was inconsistent with the medical evidence. The Court rejected the ALJ's proffered reason for the first part—the unsupported diagnosis. The accepted reason for the second part, however,

is a reason that is applicable to Lorianna R.'s entire testimony. Her statement that Plaintiff broke her ankle in three places when Plaintiff suffered only a single, mild fracture demonstrates that Lorianna R. is not a reliable witness on Plaintiff's medical conditions and symptoms, whether from a lack of understanding, poor memory, or tendency to exaggerate. This is a generally applicable reason. Accordingly, it is a germane reason to discount her entire testimony.

### 2.  Stacey Stewart and Velma Arter.

The ALJ dismissed the lay witness testimony of Lorianna R.'s two caregivers, Stacey Stewart and Velma Arter. Ms. Stewart also has worked as a caregiver for Plaintiff. AR 387. Both Ms. Stewart and Ms. Arter describe Plaintiff's ongoing struggles with incontinence and excessive vomiting. AR 387-88, 390. The ALJ's only stated reason for dismissing Ms. Stewart and Ms. Arter's testimony is that "[t]he frequency of incontinence cited by these sources has not been reported to medical providers." AR 22. The ALJ committed a legal error by dismissing lay witness testimony for that reason alone. A "lack of support from medical records" does not qualify as a germane reason for giving "little weight" to the symptom testimony of lay witnesses. *Diedrich*, 874 F.3d at 640.

This error is harmless, however, because the ALJ properly discounted Plaintiff's testimony regarding her limitations caused by her physical impairments. Both Ms. Stewart and Ms. Arter provided testimony similar to Plaintiff's testimony. An ALJ's error in discounting lay witness testimony is harmless "where the testimony is similar to other testimony that the ALJ validly discounted." *Molina*, 674 F.3d at 1114.

## D.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ improperly discounted some of Plaintiff's testimony and the treating physician opinion of Drs. Casey and Richards regarding Plaintiff's inability to maintain a regular work schedule. The record is not complete, however, and further proceedings would be useful to resolve lingering factual conflicts. Specifically, the ALJ needs to further evaluate Plaintiff's testimony regarding her mental impairments and how Plaintiff's regular work schedule would be interrupted by her physical impairments.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge